IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| The Five Mile Creek Greenway Capital Improvement Cooperative District, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 2:20-cv-01037-KOB ) |
| Corner Stone Ranch, Inc., an Alabama Non-Profit Corporation, | ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Defendant Corner Stone Ranch, Inc.'s "Motion to Dismiss for Lack of Subject-Matter Jurisdiction" (doc. 11) requires this court to determine whether it has federal question subject-matter jurisdiction over plaintiff Five Mile Creek Greenway's state-law claim to quiet title to a railroad right-of-way that bisects Corner Stone Ranch's property. Five Mile Creek's suit asks this court to declare rights that Five Mile Creek would have only under the federal National Trails System Act. Because a determination of those rights will require the court to interpret and apply that Act, the court concludes that Five Mile Creek's suit "arises under" federal law. Accordingly, the court will **DENY** Corner Stone Ranch's motion.

**I.     Factual and Procedural Background**

Corner Stone Ranch does not rely on material outside of the complaint to argue that this court lacks subject-matter jurisdiction over this case. Accordingly, Corner Stone Ranch has brought a facial challenge to Five Mile Creek's complaint under Fed. R. Civ. P. 12(b)(1) and 12(h)(3). "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [its]

1

complaint are taken as true for the purposes of the motion." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)) (internal alterations omitted).

This case concerns a narrow strip of land (the Disputed Property) in Jefferson County, Alabama upon which Five Mile Creek seeks to build a public recreational trail. CSX Transportation, Inc. used the Disputed Property as a railroad right-of-way; and in 2018, CSX conveyed the Disputed Property to Five Mile Creek by quitclaim deed. (Doc. 1 at 3–7). The Disputed Property bisects property owned by Corner Stone Ranch, and Five Mile Creek alleges that Corner Stone Ranch acquired its property through a 2008 deed that expressly excludes the Disputed Property as described as "any portion of the property…lying within a railroad right-of-way". (Doc. 1 at 8). Accordingly, under Alabama law, the Corner Stone Ranch property constitutes the "servient estate;" or, in other words, the property "burdened" by the railroad right-of-way. *See Monroe Cnty. Comm'n v. Nettles*, 288 So. 3d 452, 454 (Ala. 2019).

Five Mile Creek now seeks to build a public recreational trail on the Disputed Property under § 8(d) of the National Trails System Act, 16 U.S.C. § 1247(d), also known as the Trails Act. Corner Stone Ranch opposes Five Mile Creek's efforts; according to Five Mile Creek, Corner Stone Ranch "has now taken the position that it owns the Disputed Property and that [Five Mile Creek] does not have any rights to the Disputed Property." (Doc. 1 at 9).

Five Mile Creek claims that this court may exercise jurisdiction over this case because it "arises under" the Trails Act for purposes of 28 U.S.C. § 1331. Because the Trails Act prevents a state-law "abandonment" of a railroad right-of-way from taking place under certain circumstances, the court will describe the intersection of the Trails Act and state common law to provide background to Five Mile Creek's claim of jurisdiction. Congress passed the Trails Act in

an effort to "preserve shrinking rail trackage by converting unused rights-of-way to recreational trails." *Preseault v. I.C.C.*, 494 U.S. 1, 5 (1990). Congress achieved this goal through the "exclusive and plenary" authority of the Surface Transportation Board (formerly the Interstate Commerce Commission) to regulate the abandonment of railroad rights-of-way. *Preseault*, 494 U.S. at 8 (quoting *Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 321 (1981)); *Monroe Cnty. Comm'n v. Nettles*, 288 So. 3d 452, 454 (Ala. 2019). Under state common law, a right-of-way or easement generally reverts to the servient—or burdened—estate upon abandonment. *Nettles*, 288 So. 3d at 458–59. But as to *railroad* rights-of-way, "[f]ederal law dictates when abandonment occurs." *Barclay v. United States*, 443 F.3d 1368, 1374 (Fed. Cir. 2006).

And under the Trails Act, the *interim* trail use of railroad rights-of-way does not constitute an "abandonment" of the right-of-way, so long as the owner of the right-of-way preserves it for possible future railroad use. *Barclay*, 443 F.3d at 1373 (quoting *Caldwell v. United States*, 391 F.3d 1226, 1233 (Fed. Cir. 2004)). In other words, "[t]he Trails Act prevents a common law abandonment of the railroad right-of-way from being effected, thus precluding state law reversionary interests from vesting." *Jackson v. United States*, 135 Fed. Cl. 436, 443 (2017) (citing *Caldwell*, 391 F.3d at 1229). Courts commonly refer to this process as "railbanking." *See, e.g.*, *Nettles*, 288 So. 3d at 454 (quoting *Burnett v. United States*, 139 Fed. Cl. 797, 801–02 (2018)). *See also* 16 U.S.C. § 1247(d) ("if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated…as an abandonment of the use of [the right-of-way] for railroad purposes").

To take advantage of Trails Act's railbanking provision, a party that seeks to use the right-of-way as a recreational trail must negotiate a trail use agreement with the railroad. While

the potential trail operator and the railroad negotiate trail use, the Surface Transportation Board issues a Notice of Interim Trail Use (NITU), which "[stays] railroad abandonment during the pendency of trail use." *Barclay*, 443 F.3d at 1371. And "[i]f the railroad and the trail operator reach an agreement, the NITU extends indefinitely to permit interim trail use." *Barclay*, 443 F.3d at 1371 (quoting *Caldwell*, 391 F.3d at 1230).

In this case, the STB issued but vacated NITUs to the Jefferson County Commission and to the City of Fultondale before it finally issued a third NITU in 2015 to allow CSX and Five Mile Creek to negotiate trail use. (Doc. 1 at 5–8). CSX then conveyed the Disputed Property to Five Mile Creek by a 2018 quitclaim deed. (Doc. 1 at 7). Under the terms of the Purchase Sale Agreement between Five Mile Creek and CSX, Five Mile Creek acknowledged that the Disputed Property "remained subject to the jurisdiction of the STB…which retained the right to compel the reactivation of rail service" on the Disputed Property. (Doc. 1 at 7).

The parties now disagree as to the ownership of the Disputed Property and—if Five Mile Creek owns the Disputed Property—as to Five Mile Creek's rights to build a recreational trail on the Disputed Property. So, Five Mile Creek brought this suit for Declaratory Judgment (Count I) and to Quiet Title to the Disputed Property under Ala. Code §§ 6-6-541, *et seq.* (Count II). Five Mile Creek asks this court to declare that it has "access to the Disputed Property for the construction of a recreational trail authorized by" the Trails Act and to declare that, pursuant to the Trails Act, it "owns and has title to the…Disputed Property." (Doc. 1 at 10). Five Mile Creek asserts that this court has jurisdiction pursuant to 28 U.S.C. § 1331 (so-called "federal question" jurisdiction). According to Five Mile Creek, "[t]he source and extent of [its] legal right to the [Disputed Property] depends entirely on the interpretation and application of federal law." (Doc. 1 at 2).

But Corner Stone Ranch disagrees and has moved under Fed. R. Civ. P. 12(b)(1) and 12(h)(3) to dismiss Five Mile Creek's complaint for lack of subject-matter jurisdiction. (Doc. 11). According to Corner Stone Ranch, "this real property case does not fall within the 'special and small' category of state-law claims invoking federal question jurisdiction." (Doc. 11 at 4) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). Corner Stone Ranch's motion is now ripe for the court's review.

## II.     Standard

Five Mile Creek seeks to invoke this court's federal question subject-matter jurisdiction under 28 U.S.C. § 1331 because it claims that its state-law quiet title action "arises under" federal law. Under the axiomatic "well-pleaded complaint rule," the face of the plaintiff's complaint must present a federal question to support federal jurisdiction. *Dunlap v. G&L Holding Grp., Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). In other words, a federal-law defense to a plaintiff's claim does not in itself support federal jurisdiction. *Dunlap*, 381 F.3d at 1292 (citing *Mobil Oil Corp. v. Coastal Petroleum Co.*, 671 F.2d 419, 422 (11th Cir. 1982)). Plaintiffs usually satisfy the well-pleaded complaint rule's requirements by bringing a cause of action created by federal law. *See Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1295 (11th Cir. 2008) (citing *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 805–06 (1986)).

But even if the plaintiff's well-pleaded complaint does not contain a federal cause of action, a plaintiff's case may still "arise under" federal law. *Bloomberg*, 552 F.3d at 1295 (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)). In *Grable*, the Supreme Court emphasized that no bright-line test exists to determine federal jurisdiction under § 1331 and noted instead that "federal jurisdiction demands not only a contested federal issue,

but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313 (citing *Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 164 (1997)).

And the Supreme Court has since clarified the circumstances under which courts may exercise federal question jurisdiction in the absence of a federal cause of action. *See Gunn v. Minton*, 568 U.S. 251, 258 (2013). In the words of the Supreme Court, "federal jurisdiction over a state law claim will lie if a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258 (citing *Grable*, 545 U.S. at 313–14). But the Supreme Court has also admonished that this form of federal question jurisdiction will exist in only a "special and small category of cases." *Gunn*, 568 U.S. at 258 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)) (internal quotations omitted).

A state-law claim "necessarily raises" a question of federal law when the court's determination of the claim *requires* it to apply federal law. *Grable*, 545 U.S. at 312–13 (citing *Smith v. Kan. City Title & Tr. Co.*, 255 U.S. 180, 199 (1921)). And a state-law claim may "necessarily raise" a federal question "where the vindication of a right under state law necessarily [turns] on some construction of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983) (citing *Smith*, 255 U.S. 180)). To put it another way, the mere fact that a question of federal law may "[lurk] in the background" of the state-law claim will not support federal question jurisdiction. *Franchise Tax Bd.*, 463 U.S. at 12 (quoting *Gully v. First Nat'l Bank of Meridian*, 299 U.S. 109, 117 (1936)).

But because the "mere need to apply federal law in a state-law claim will [not] suffice to open the 'arising under' door," the parties must also "actually dispute" the question of federal law. *Grable*, 545 U.S. at 313. The parties "actually dispute" the question of federal law where, for example, "the [state-law] claim will be supported if the federal law is given one construction or effect and defeated if it is given another." *Dunlap v. G&L Holding Grp.*, 381 F.3d 1285, 1290 (11th Cir. 2004) (quoting *Mobil Oil Corp. v. Coastal Petroleum CO.*, 671 F.2d 419, 422 (11th Cir. 1982)). And the state-law claim more likely "arises under" federal law where the question of federal law represents "the only legal or factual issue contested in the case." *Grable*, 545 U.S. at 315.

As to the "substantiality" requirement, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Dunlap*, 381 F.3d at 1290 (quoting *Merrell Dow Pharms.*, 478 U.S. at 813). And the case likewise does not meet the substantiality requirement where the question of federal law only has significance "to the particular parties in the immediate suit.…The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Gunn v. Minton*, 568 U.S. 251, 260 (2013). The state-law claim meets the "substantiality" requirement where it presents "an important issue of federal law that sensibly belongs in a federal court." *Grable*, 545 U.S. at 315. The Supreme Court has pointed out that it found the question in *Grable* "substantial" at least in part because the court's interpretation of federal law would be "both dispositive of the case…and controlling in numerous other cases." *Empire Healthchoice*, 547 U.S. at 700 (citing *Grable*, 545 U.S. at 313).

But in *Gunn*, on the other hand, the Supreme Court held that a state-law legal malpractice action that would require the state court to determine a question of federal patent law did not

7

meet *Grable*'s "substantiality" requirement because of the "backward-looking nature" of the legal malpractice claim. 568 U.S. at 261. Unlike the question of federal tax law at issue in *Grable*, a court's resolution of the question of patent law in *Gunn* would not "change the real-world result of the prior federal patent litigation," because Mr. Minton's patent would "remain invalid." 568 U.S. at 261.

Finally, even a state-law claim that necessarily raises a disputed and substantial question of federal law will not necessarily fall under federal question jurisdiction. Instead, "the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable*, 545 U.S. at 314.

In *Grable*, for example, the Supreme Court held that a federal court's exercise of jurisdiction over a state-law quiet title action that raised a substantial question of federal tax law would not "[upset] the state-federal line drawn…by Congress" because "it [would] be the rare state title case that raises a contested matter of federal law." *Grable*, 545 U.S. at 314, 315. Its holding, the Supreme Court determined, would "portend only a microscopic effect on the federal-state division of labor." *Grable*, 545 U.S. at 315.

Accordingly, to properly exercise federal jurisdiction over this case, the court must determine whether Five Mile Creek's state-law declaratory judgment and quiet-title claims necessarily raise a disputed and substantial question of federal law that this court may determine without disturbing the federal-state division of labor created by Congress.

**III.    Analysis**

The court concludes that Five Mile Creek's state-law quiet title action does indeed "arise under" federal law for purposes of 28 U.S.C. § 1331; accordingly, this court may properly

exercise federal question subject-matter jurisdiction over this case. The face of Five Mile Creek's complaint necessarily raises a substantial and disputed question of federal law that this court may consider without disturbing the federal-state division of labor. The court will explain its conclusions in turn.

### A. *Necessarily Raised / Actually Disputed*

Five Mile Creek's complaint necessarily raises a question of federal law: whether the Trails Act allows it to build a recreational trail on the Disputed Property. The Trails Act proclaims that the interim trail use of a railroad right-of-way does not constitute an "abandonment" of that right-of-way for state law purposes; in other words, "[t]he Trails Act prevents a common law abandonment of the railroad right-of-way from being effected, thus precluding state law reversionary interests from vesting." 16 U.S.C. § 1247. *See also Jackson v. United States*, 135 Fed. Cl. 436, 443 (2017) (citing *Caldwell v. United States*, 391 F.3d 1226, 1229 (Fed. Cir. 2004)).

But Under Alabama law, a railroad right-of-way or easement reverts to the servient property owner—here, Corner Stone Ranch—when the holder of the right-of-way "abandons" the right of way; or, in other words, discontinues using it for railroad purposes. *See Monroe Cnty. Comm'n v. Nettles*, 288 So. 3d 452, 461–61 (Ala. 2019) (citing *Nashville, C. & St. L. Ry. V. Karthaus*, 43 So. 791 (1907)). And the Alabama Supreme Court has held that a railroad abandoned its right-of-way when, like here, it negotiated to sell the right-of-way to a third party for trail use. *Nettles*, 288 So. 3d at 462.

Corner Stone Ranch argues that Alabama law exclusively determines the rights Five Mile Creek has to the Disputed Property. But the court agrees with Five Mile Creek's argument that the Trails Act provides the *only* legal basis under which Five Mile Creek could properly claim

the legal right to build a recreational trail on the Disputed Property. Without the benefit of the Trails Act, Five Mile Creek may not even *own* the Disputed Property. And here, Five Mile Creek alleges that the Surface Transportation Board has already put its imprimatur on Five Mile Creek's interim trail use of the Disputed Property by issuing it a NITU in 2018. To put it in the words of the Supreme Court, Five Mile Creek's complaint seeks the "vindication of a right under state law"—its right to the Disputed Property—"[that] necessarily [turns] on some construction of federal law;" namely, the Trails Act. *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983) (citing *Smith v. Kan. City Title & Tr. Co.*, 255 U.S. 180, 199 (1921)).

The parties also dispute the interpretation and application of the Trails Act for *Grable* purposes. *See* 545 U.S. at 314. Five Mile Creek may build a recreational trail on the Disputed Property only under the protection of the Trails Act. But Corner Stone Ranch may prevent Five Mile Creek from building a recreational trail on the Disputed Property only by showing that the Trails Act *does not* apply to Five Mile Creek's claim to the Disputed Property. Put in the context of the subject-matter jurisdiction inquiry, Five Mile Creek will succeed on its quiet title claim if the court gives the Trails Act its advanced "construction or effect" but will fail on that claim if the court gives the Act Corner Stone Ranch's preferred "construction or effect." *See Dunlap v. G&L Holding Grp.*, 381 F.3d 1285, 1290 (11th Cir. 2004) (quoting *Mobil Oil Corp. v. Coastal Petroleum Co.*, 671 F.2d 419, 422 (11th Cir. 1982)).

Indeed, like the question of federal tax law raised by the quiet-title claim at issue in *Grable*, the interpretation and application of the Trails Act to Five Mile Creek's quiet-title claim "appears to be the only legal or factual issue contested in the case." 545 U.S. at 315. Although Corner Stone Ranch argues that state law governs Five Mile Creek's use of the Disputed Property, only the Trails Act will allow Five Mile Creek to use the Property as a recreational

10

trail. Consequently, the court concludes that Five Mile Creek's state quiet-title action necessarily raises a disputed question of federal law.

### B.      *Substantial / Effect on Federal-State Division of Labor*

But the "mere need to apply federal law in a state-law claim will [not] suffice to open the 'arising under' door." *Grable*, 545 U.S. at 313. Instead, "the implicated federal issue must be *substantial*." *Dunlap*, 381 F.3d at 1291–92 (citing *Franchise Tax Bd.*, 463 U.S. at 13) (emphasis in original). At first blush, the court's interpretation of the Trails Act in the context of this case seems to fall into the "fact-bound and situation-specific" category of cases that the Supreme Court has held do not support federal jurisdiction. *See Gunn*, 568 U.S. at 263 (quoting *Empire Healthchoice Assurance, Inc.*, 547 U.S. at 701). Five Mile Creek asks this court to determine its individualized rights to *one* strip of disputed property; on its face, this case appears similar to *Empire Healthchoice*, in which the Supreme Court held that an insurance company's individualized claim for reimbursement of benefits did not "arise under" federal law for purposes of § 1331. 547 U.S. at 700.

But Congress's stated goals in passing the Trails Act confirm that the court's conclusion in *this* Trails Act case will bear importance "to the federal system as a whole." *Gunn*, 568 U.S. at 260. As the Supreme Court pointed out, Congress determined in passing the Trails Act that "*every* line is a potentially valuable national asset that merits preservation even if no future rail use for it is currently foreseeable." *Preseault v. I.C.C.*, 494 U.S. 1, 19 (1990) (emphasis added). Unlike Mr. Minton's patent in *Gunn v. Minton*, which would remain invalid regardless of a court's interpretation of federal law, this court's interpretation of the Trails Act will determine whether Five Mile Creek can preserve the Disputed Property as a "valuable national asset." *Preseault*, 494 U.S. at 19. And this court's interpretation of the Trails Act may well control in

11

other cases, as the parties have not provided—nor has the court found—any Eleventh Circuit authority interpreting the Trails Act in a situation similar to the one at hand. *See Gunn*, 568 U.S. at 262 (citing *Empire Healthchoice*, 547 U.S. at 700) (claim more likely to qualify as "substantial" for *Grable* purposes where "state court's resolution of the federal question 'would be controlling in numerous other cases'").

More importantly, however, the interpretation of the Trails Act presents "an important issue of federal law that sensibly belongs in a federal court." *Grable*, 545 U.S. at 315. Federal law governs railroad abandonments, and Congress has a long history of regulating railroad abandonments. *Preseault*, 494 U.S. at 5 n.3, 6, 19 (citing *Colorado v. United States*, 271 U.S. 153 (1926)). And Five Mile Creek claims in this case that the STB invoked its authority under the Trails Act to suspend the abandonment of the Disputed Property to allow for interim trail use. *See* 16 U.S.C. § 1247(d).

The court also expresses some concern about a decision of the Alabama Supreme Court that would likely govern this case had Five Mile Creek filed it in Alabama state court. *See Monroe Cnty. Comm'n v. Nettles*, 288 So. 3d 452 (Ala. 2019). The Court in *Nettles* held that the owner of a railroad right-of-way abandoned the right-of-way under Alabama common law and affirmed the decision of a lower court to quiet title to the right-of-way in the servient landowners. 288 So. 3d at 462. But, as this court explained above, *federal* law—not state common law—governs the abandonment of railroad rights-of-way, and the STB has the "exclusive and plenary" authority to allow interim trail use of a railroad right-of-way. *Preseault*, 494 U.S. at 8 (quoting *Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 321 (1981)).

Chief Justice Parker authored a strong dissent in *Nettles* expressing concern that the Court's decision *ignored* both the Trails Act and former Alabama Supreme Court precedent on the issue of railroad right-of-way abandonment. *See* 288 So. 3d at 462–67 (Parker, C.J., dissenting). And an appellate court in Illinois examined *Nettles* and reached the same conclusion as Chief Justice Parker: that the *Nettles* decision ignored federal law. *Burgoyne, LLC v. Chi. Terminal R.R. Co.*, --- N.E.3d ----, ---- 2020 WL 3470523, at *10 (Ill. App. Ct. June 25, 2020).

The murky status of potentially dispositive Alabama law supports the court's conclusion that the Trails Act question this court must decide meets § 1331's "substantiality" requirement. The federal system has a "serious interest" in "claiming the advantages thought to be inherent in a federal forum;" namely, the *federal* interpretation of a *federal* law that exclusively governs the abandonment and interim trail use of former railroad rights-of-way. *See Grable*, 545 U.S. at 313. This federal interest carries particular weight where, as here, a questionable state court decision "stand[s] as binding precedent" for future claims under the Trails Act. *Gunn*, 568 U.S. at 264–65.

And finally, the court concludes that its exercise of jurisdiction over Five Mile Creek's case will not disturb the federal-state balance of labor. *See Grable*, 545 U.S. at 315. As the Supreme Court in *Grable* succinctly explained, "it will be the rare state title case that raises a contested matter of federal law." *Grable*, 545 U.S. at 315. The court concludes that this case falls into the "rare" exception carved out by *Grable*. 545 U.S. at 315. As the court has already explained, the parties have not pointed the court to *any* Eleventh Circuit authority from either the district or appellate level interpreting the Trails Act, and the court has located only two reported decisions from Alabama courts interpreting the Act. *See Nettles*, 288 So. 3d 452; *Chatham v. Blount Cnty.*, 789 So. 2d 235 (Ala. 2001). Although state quiet-title actions *in general* certainly

13

do not qualify as "rare," the dearth of reported decisions demonstrates that state quiet-title actions involving the Trails Act do not frequently come before *any* court.

Although not binding, the Ninth Circuit has reached the same conclusion in a couple of cases with facts very similar to those at hand. In *Hornish v. King County*, 899 F.3d 680, 689 (9th Cir. 2018), the court concluded that the defendant owner of a railroad right-of-way properly removed a state quiet title action brought by the servient landowners because, like here, the action would require the court to determine whether "the Trails Act creates, supplements, or replaces any previously existing railroad easement." And in the pre-*Grable* case of *King County v. Rasmussen*, 299 F.3d 1077, 1082 (9th Cir. 2002), the court faced a situation *identical* to the one at hand: the owner of a railroad right-of-way alleged "that it had a legal right to the strip of land in question even if the original deed conveyed only an easement" based on the Trails Act, 16 U.S.C. § 1247(d). The Ninth Circuit concluded that this allegation constituted a "federal question on the face of the well-pleaded complaint" and ratified that conclusion post-*Grable*. *See Hornish*, 899 F.3d at 691 n.2 (quoting *Rasmussen*, 299 F.3d at 1082).

In sum, the court concludes that Five Mile Creek's state-law case "arises under" federal law for the purposes of 28 U.S.C. § 1331; the court will accordingly exercise federal question subject-matter jurisdiction over this case.

**IV.   Conclusion**

For the reasons explained above, Five Mile Creek's state-law quiet title action "arises under" federal law, so this court will exercise jurisdiction over it under 28 U.S.C. § 1331. The court will **DENY** Corner Stone Ranch's Motion to Dismiss for Lack of Subject-Matter Jurisdiction (doc. 11) and will enter an order to that effect contemporaneously with this Opinion.

**DONE** and **ORDERED** this 6th day of May, 2021.

_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE